EDWARD C. ELLIOTT v. THE AMAZON INSURANCE COMPANY AND THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY.

*Equity—Variance.*

Relief cannot be given in equity where the case made out by the proofs is different from the case set up in the bill.

Appeal from Wayne. Submitted October 20. Decided January 10.

BILL to compel surrender of insurance policy. Defendants appeal. Reversed; bill dismissed.

*Alfred Russell* and *H. M. Campbell* for complainant.

*Geo. V. N. Lothrop* for defendant.

GRAVES, C. J. This controversy is about the right to an endowment policy issued by the Connecticut Company on the 8th of December, 1866, to one E. C. Delevan Clark, for $3000, and payable on his attaining the age of forty

years on September 5th, 1880. The Amazon Company and complainant are hostile claimants of the policy, and both rely on transfers by Clark. The company received possession from him about the 7th of July, 1876, and assert a right to retain it in virtue of an arrangement then consummated between them and which included his blank assignment of the policy which they filled with their name about four years later. They have continued to keep possession against the objection of both Clark and complainant. Complainant founds his title on an assignment made to him by Clark, September 13, 1876. But there seems to be little question on the evidence that Clark is still the virtual claimant and that the suit is essentially in his interest. The Connecticut Company is ready to pay whoever may be entitled, and is indifferent about the result.

The first thing of importance is to see what case is alleged and whether the evidence substantially supports it. If it does not, it is needless to go further. With the view of seeing how the dispute originated and in what the essence of complainant's case consists, it is expedient to make a brief reference to a few of the surrounding facts. Clark was local agent at Detroit for the Amazon Company, and on the first of April, 1876, was behind in his accounts $1800. He occupied a residence on High street, which was in his wife's name, and was under mortgage for $6000. To secure the deficit in his accounts the company received his notes and a second mortgage on the residence. The policy was in pledge to one Shearer to secure him for being indorser on a note of Clark & Crawford for $500. At the end of three months Clark was again behind in his accounts about $800. This was the first of July, 1876. Conner, a special agent for the Amazon Company, went to Detroit to see Clark on the subject. He endeavored to obtain payment or security, and negotiations with Clark were carried on for several days. West, the company's secretary, was likewise at Detroit and somewhat co-operated with Conner. An arrangement was finally concluded and it involved among other things an advancement of $500 by the Ama-

zon Company to redeem the policy from the pledge to Shearer, the execution of a bond and third mortgage on the residence by Clark's wife to that company for $500 payable in twelve months with interest at ten per cent. payable semi-annually, and the immediate passage of the possession of the policy to the Amazon Company with a blank assignment indorsed. These terms were all complied with.

We may now see how the arrangement is set forth and counted on by the bill. The statement is there in substance that the Amazon Company were to procure a loan on said policy for about $2000 and deduct from the proceeds the July deficit of about $800 and also the $500 advanced to redeem the policy, and pay over the remainder to Clark for use as capital to enlarge his business as insurance agent. It is then averred that the parties intended that the blank in the assignment should be filled with the name of whoever should lend the money and should not be filled by the name of said company, and that to obtain a loan in such manner and not for the purpose of securing the company, said Clark delivered the policy to Conner July 7, 1876; that the company thereupon refused to raise any loan and repudiated the arrangement and yet refused to give up the policy, and insisted and now insist that they have a lien on it for the amount due from Clark as agent. The evidence to maintain this statement of what the agreement was and to support the averments in regard to it is drawn entirely from Clark or nearly so. Some items from other sources are relied on as going to corroborate his version.

It is consequently proper to refer to the substance of his explanation. He says West suggested that he could effect a loan of some $2000 on the policy among his moneyed friends in Cincinnati for Clark if the latter could withdraw the policy from the pledge and take it down there; that if such an arrangement were accomplished, it would enable him to pay the Amazon Company the last arrear of some $800 in his account, and also afford him a supply of means to go on with his insurance business;

that he, Clark, then tried to obtain a loan on the policy in Detroit and failed and Conner proposed that the Amazon Company should advance to Mrs. Clark $500 with which to redeem the policy and that she should give a third mortgage on the residence to the company for the amount payable in one year with interest at ten per cent., and that by such means possession of the policy could be obtained and Clark could take it to Cincinnati and there negotiate for the money; that finally Mrs. Clark did execute her bond and the mortgage for $500 to the company and Conner drew on the latter for that sum and his draft being indorsed by Mr. Duffield, who was counsel for the company, it was at once discounted by a Detroit bank and the proceeds were applied to redeem the policy; that it was then understood that Clark should go to Cincinnati immediately to effect the contemplated loan or have it effected for him by Mr. West; that he should assign the policy in blank, and that Conner should forward it to Cincinnati with an explanation of the transaction; that the purpose of the blank assignment was that the name of whoever might lend money on the policy might be inserted and the object of leaving the policy to be forwarded by Conner through the mail was that the president of the Amazon Company might see it and ascertain from the agents of the Connecticut Company the amount of its present value; that on the occasion of the assignment a receipt to Clark for the policy was mentioned and one was drawn which he, Clark, objected to because it spoke of a sale, which was something he would not consent to; that Mr. Duffield observed that Clark had done business with the company long enough to have confidence in them, and as Mr. Conner was to write a full explanation to the company and he, Clark, was himself going down there the next day and the policy could be returned in case no loan was effected, it was not important about a receipt; that relying on the arrangement and this statement of Mr. Duffield he, Clark, trusted the policy with the blank assignment on it in the hands of Mr. Conner for the purpose of being forwarded.

to Cincinnati and that the receipt said to have been given by Conner as agent of the company to Clark on the 7th of July, 1876, and a copy of which is appended to Conner's deposition and is in evidence, was never assented to by Clark nor accepted by him.

The fact is conspicuous that the case which is made by this evidence is different from the case set up in the bill. According to the bill the policy with Clark's blank assignment upon it was received by the company under an agreement by which the company were to procure a loan upon it of $2000 and out of the proceeds pay themselves the amount for which Clark was behind in his accounts the first of July, 1876, and also the $500 advanced to redeem the policy; but according to Clark's testimony the policy with the blank assignment was received by the company upon an agreement, which left the policy entirely under his control and entitled him to conduct in person the business of raising money on it, unless he elected to leave it to West to act for him. It is scarcely needful to point out other existing discrepancies. The difference referred to is material, and no construction of what is claimed as matter tending to corroborate Clark, can alleviate it. No amount of support of his version as a witness can harmonize it with the version of the bill.

But the items of testimony relied on to corroborate Clark are scarcely of any value for that purpose. Such of them as possess any force as evidence are as consistent for the most part, to say the least, with the defense as with that part of his testimony which conflicts with it. It is not unlikely that some of the incongruities in the testimony may be accounted for on the ground that the parley continued through several days and elicited various suggestions, and that some pieces of testimony refer to one class of incidents, or one stage of the negotiations, and other pieces to different incidents or to different occasions.

But the case laid in the bill encounters further difficulty. The defendant's evidence, including the just inferences and implications from undoubted facts, suffices to establish that

the terms on which the Amazon Company received the policy were not as stated in the bill nor even as stated by Clark on the stand.

The facts will not be quoted nor discussed.

It is sufficient to say, in regard to this aspect of the case, that the weight of evidence sustains the claim of the company that the paper said to have been given by the company through Conner to Clark as evidence of the terms of the arrangement, was so given in point of fact, and is to be regarded as the agreement under which Clark delivered the policy and under which the company received it. It is as follows:

" Whereas, E. C. D. Clark has assigned in blank policy No. 63,904 in Connecticut Mutual Life Insurance Company [and delivered the same to the Amazon Insurance Company], with a view to make a loan thereon or to sell the same absolutely. Now it is agreed between said company and said Clark, that if a loan and not a sale is made, said Clark's residuary interest shall be protected by a receipt back to him, or in such other form as will protect said Clark's residuary interest in said policy over and above said loan, and in case no loan is effected said company are to have a lien under said assignment for the amount of their claim against said Clark.

[Signed]          O. E. Conner, State Agent.
*Detroit, July* 7, 1876."

It follows that the case alleged in the bill is not only not supported by the showing made by complainant but is also successfully disputed by the evidence given for the defense.

The decree given in complainant's favor should therefore be reversed and a decree entered dismissing the bill, with the costs of both courts against the complainant.

Cooley and Marston, JJ. concurred.

Campbell, J. I am not satisfied that there is enough in the record to make it proper to reverse the decree below. My own view of the testimony agrees with that of the judge below that the policy was not intended to be security for the old debt of Clark.