ANDERSON, by guardian *ad litem,* Appellant, vs. CHICAGO BRASS COMPANY, Respondent.

*February 1—February 23, 1906.*

*Master and servant: Negligence: Personal injury: Machinery:*
*Guards: Failure to warn: Assumption of risk: Nonsuit: Instructions to jury: Prejudicial error: "Ordinary care:" Special verdict: Opinion evidence: Depositions: Admissibility.*

1. In an action for personal injuries received by a servant in feeding brass sheets into a rolling machine, the negligence alleged was (1) in not providing the machine with a guard, and (2) in not warning the plaintiff of the danger resulting from sharp slivers of brass which occasionally formed on the sides of the sheets. Under the evidence, stated in the opinion, *held:*

    (1) The court rightly struck out the evidence as to the guard and eliminated that question from the case.

    (2) As to the failure to warn, there was evidence from which the jury might find negligence on the part of defendant.

    (3) Assumption of risk as matter of law was not shown.

    (4) A motion for nonsuit was properly overruled.

2. An instruction to the jury on the subject of burden of proof and preponderance of the evidence as follows: "By burden of proof I mean that it is incumbent on the party affirmatively asserting an allegation to establish it by a fair preponderance of the credible evidence, facts, and circumstances proven on the trial; and by 'preponderance of evidence,' as I have used the term, is meant the greater convincing power of evidence. That is, in the trial of a lawsuit that side has furnished the preponderance of evidence which has produced evidence of greater convincing power in the minds of the jury than that produced by the other side. And when the law imposes upon a party the burden of proof it means that such party is bound to produce evidence in support of the proposition involved of greater convincing power than that produced by the other side. Such convincing power of evidence is not necessarily determined by the number of witnesses, for it may be that the testimony given by one wit-

Anderson v. Chicago Brass Co. 127 Wis. 273.

ness has greater convincing power than that given by several witnesses contradictory or tending to contradict that given by the one," gives a definition of the term "preponderance of evidence" with substantial correctness, but not so with the definition of "burden of proof." The party on whom rests the burden of proof does not lift that burden by merely producing a preponderance of evidence. In order to entitle him to a finding in his favor his evidence must not only be of greater convincing power, but it must be such as to satisfy or convince the minds of the jury of the truth of his contention. Omission to convey this idea to the jury is prejudicial error.

3. In an action for personal injuries received by a sixteen-year-old boy, an instruction defining ordinary care as "such care as boys of the age, intelligence, and experience of the plaintiff usually exercise under similar circumstances" is not erroneous, although it would have been more exact had it contained words importing the idea that the care used must be the care used by the great mass of boys, or by the class of ordinarily careful boys.

4. In an action for personal injuries received by a servant from machinery, an instruction: "You are further instructed that the danger incident to the feeding of the straightening rolls of the machine, considered apart from the added dangers, if any, arising from the presence of the rough edges or slivers on the bars of brass, were open and obvious and are presumed to have been comprehended by the plaintiff, and in respect to which he assumed all risks," is misleading without an explanation that assumption of risk is a form of contributory negligence or want of ordinary care.

5. In an action for personal injuries received in operating a machine, one of the issues was whether the plaintiff did his work with ordinary care, and a question of a special verdict: "Did the plaintiff at the time of the accident feed the machine in the manner usually and customarily employed by experienced men," is *held* to relate to evidentiary matter instead of to a material issue.

6. When, in an action for personal injuries received while feeding a sheet of brass through the rollers of a machine, the plaintiff admitted that he knew of rough edges, but denied that he knew of the liability of there being slivers on the edge which might cause his hand to be drawn into the rolls, the coupling together, in a question of a special verdict, of an inquiry as to plaintiff's knowledge of liability of slivers on the sheets of brass with an inquiry as to his knowledge of the rough edges is prejudicial to plaintiff.

7. In such case a special verdict finding, in answer to one question, that plaintiff knew there were liable to be slivers on the bars of brass and that he ought to have known of the danger of his glove or hand being caught on them, and, in answer to another question, that he was not guilty of any want of ordinary care which contributed to the injury, is on its face inconsistent.

8. In an action for personal injuries received by a sixteen-year-old boy in operating machinery, the court excluded answers to questions asked experts bearing on whether the machine in question was a dangerous machine, whether it was so regarded, and whether it was not unusual to set boys at work on it for that reason. *Held*, that such interrogatories presented questions to be solved by the jury from the facts and circumstances in evidence, and on which the opinion of experts was not admissible.

9. The deposition of the employee of a party taken before trial under the provisions of sec. 4096, Stats. 1898, is inadmissible on the trial when the employee is present in court.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Reversed.*

This is an action to recover for personal injuries suffered by the plaintiff, an employee of the defendant sixteen years of age, while he was engaged in feeding sheets of brass to a machine called the straightening rolls, in the rolling mills of the defendant at Kenosha. The machine in question consists of an iron framework standing on the floor, supporting five metal rollers about six inches in diameter, which revolve by means of steam power applied to a pulley at one end of the machine, the rollers being so arranged as to compress the sheets of brass as they pass between them, three rollers being below and two above the sheets. The sheets of brass which the plaintiff was feeding on the day of the injury were about twelve feet long, eight to twelve inches wide, and about as thick as an ordinary book cover. These sheets lay on the floor at one side of and in front of the machine, and the plaintiff, in feeding, would pick up one and put the end between the rollers as they revolved, and guide it with his hands as it passed between the rollers until it was nearly through, and then pick up another

sheet and repeat the process. On the other side of the machine another employee received the sheet as it passed through and disposed of it. The object of rolling the sheets was to straighten and smooth them, they having already passed through other rolling machines, and having been gradually reduced in thickness from a bar about an inch thick. These various rolling processes produced some roughness on the edges of the sheets, and it appears that some of the sheets were ordinarily passed through the slitting machine to take off the rough edge before being put through the straightening rolls. The plaintiff had worked about four months in the defendant's mills before the accident; he was generally employed in the tinshop handling and wiping off tinned sheets of brass; at intervals, however, he had worked in the finishing department, and had several times been occupied in taking sheets from the straightening rolls, and twice before the injury he had fed the straightening rolls for short periods of time. He was furnished gloves by the defendant to use in doing his general work, and on the day of the accident, July 14, 1903, he had the gloves upon his hands buttoned at the wrist. On the day named he was feeding sheets through the straightening rolls, and as he fed them he held his hands on the edges of the sheets to guide them as they passed through. The evidence tends to show that, after working for fifteen minutes or so, a sharp longitudinal sliver of brass upon the edge of one of the sheets which he was feeding pierced the palm of the glove upon his right hand and drew his hand into the rolls, mangling it so as to necessitate amputation. The plaintiff claims that the defendant's foreman, one Schmelling, set him at this work, but this is denied by Schmelling. No warning of the danger was given him, nor direction as to the manner of doing the work. The plaintiff claims that he had no knowledge that such slivers ever formed upon the sheets, and the evidence tends to show that they only formed occa-

sionally.    The negligence claimed in the complaint was, first, in failing to provide a guard upon the machine, and, second, in failing to warn the plaintiff of the danger.    The defendant denied that the plaintiff was set at work at the machine at all, and alleged that he was guilty of contributory negligence.    The following special verdict was rendered:

"(1) Did the defendant, through its foreman, James Daniel Schmelling, direct the plaintiff to feed brass to the straightening rolls on the day and prior to the time of the accident? A. Yes.    (2) Did the plaintiff at the time of the accident feed the machine in the manner usually and customarily employed by experienced men?    A. Yes.    (3) Did the plaintiff, at and prior to the time of the accident, know that there were liable to be slivers and rough edges on the bars of brass run through the straightening rolls?    A. Yes.    (4) Ought the plaintiff in the exercise of reasonable care and prudence and under all the circumstances of the case to have understood and comprehended the danger of his glove or hand being caught by the rough edges or slivers on the bars of brass?    A. Yes. (5) If your answer to question 1 is 'Yes,' then ought the defendant in the exercise of reasonable care and prudence, under all the circumstances and in view of all previous experience, to have apprehended that there was danger that the plaintiff's hand might be drawn into the rolls in the manner described in the testimony?    A. No.    (6) If your answers to questions 1 and 5 are 'Yes,' then was the failure of the defendant to instruct the plaintiff as to the danger of his glove being caught on the slivers and rough edges of the bars of brass and as to the means of avoiding the same the proximate cause of the injury by the plaintiff sustained?    A. No. (7) Was the plaintiff guilty of any want of ordinary care which contributed to produce the injury sustained by him? A. No.    (8) In the event that the court is of the opinion that the plaintiff is entitled to a judgment in this case, then at what sum do you fix the damages by him sustained? A. $3,000."

Motions by the plaintiff to change the answers to the questions of the special verdict, and for judgment upon the ver-

dict, and to set aside the verdict and grant a new trial, were successively overruled, and judgment was rendered on the verdict for the defendant, from which the plaintiff appeals.

*Norman L. Baker,* for the appellant.

For the respondent there was a brief by *Peter Fisher,* attorney, and *Kearney, Thompson & Myers,* of counsel, and oral argument by *Mr. Fisher* and *Mr. W. D. Thompson.*

Winslow, J.   The defendant made a motion for nonsuit at the close of the plaintiff's evidence, and it now claims that, regardless of any question of error in the reception of evidence or charge of the court, the judgment should be affirmed because the plaintiff made no case.   Defendant's contentions on this point are, in general, that no negligence was shown on its part, and that, even conceding that there was any such negligence shown, the plaintiff knew, or ought to have known, of the danger, and assumed the risk.   The plaintiff claimed negligence in two respects: (1) In not providing the machine with a guard, and (2) in not warning the plaintiff of the danger resulting from sharp slivers of brass which occasionally occurred on the sides of the sheets.   As to the first of these claims there was evidence showing that a sort of a metal canopy or guard was sometimes placed over the top rollers which came down in front nearly to the sheet of brass, that this canopy was not on the machine at the time of the accident, and the claim is that its absence constituted negligence.   The evidence, however, failed to show that this canopy or guard was in general use in this shop or other shops upon similar machines; that its principal object was to prevent foreign substances from falling on the sheet of brass as it was passing through the rolls, nor was it made apparent how it could in any way have prevented the accident in question. On these grounds the court rightly struck out the evidence as to the guard and eliminated that question from the case.

Upon the question of failure to warn, however, we think

there was evidence from which the jury might find negligence on the part of the defendant, and we do not think that the evidence showed assumption of risk as matter of law. The evidence tended to show that while the edges of the sheets were frequently rough and uneven, and the plaintiff knew that fact, it was only occasionally, sometimes at intervals of several days, that a sharp sliver formed longitudinally on the edge, and that the plaintiff had no knowledge that such slivers ever formed. Now it is manifest that the danger to an operative resulting from the occasional presence of these sharp rigid slivers was entirely different from the danger resulting from the presence of a mere rough edge, and if this occasional and serious danger was known, or under the circumstances ought to have been known, to the employer, and was not known or capable of being discovered by the employee in the exercise of ordinary care, the employer would be guilty of negligence in not warning the employee thereof when setting him at work. By parity of reasoning, the plaintiff could not properly be held to have assumed the risk as matter of law, so we conclude that the motion for a nonsuit was properly overruled.

The serious questions in the case arise upon the charge of the court and the special verdict. The court charged the jury on the subject of burden of proof and preponderance of the evidence as follows:

"I shall use the term 'burden of proof' in connection with these instructions, and by burden of proof I mean that it is incumbent on the party affirmatively asserting an allegation to establish it by a fair preponderance of the credible evidence, facts, and circumstances proven on the trial. And by 'preponderance of evidence,' as I have used the term, is meant the greater convincing power of evidence. That is, in the trial of a lawsuit that side has furnished the preponderance of evidence which has produced evidence of greater convincing power in the minds of the jury than that produced by the other side. And when the law imposes upon a party the burden of proof it means that such party is bound to produce evidence in support of the proposition involved of greater con-

vincing power than that produced by the other side. Such convincing power of evidence is not necessarily determined by the number of witnesses, for it may be that the testimony given by one witness has greater convincing power than that given by several witnesses contradicting or tending to contradict that given by the one."

The definition thus given of the term "preponderance of the evidence" was substantially correct, but not so with the definition of "burden of proof." It is well settled by a long series of decisions in this court that the party upon whom rests the burden of proof does not lift that burden by merely producing a preponderance of evidence. He may produce a preponderance, that is, he may produce evidence of slightly greater convincing power to the mind than that produced by his opponent, but still his evidence may be weak and leave the mind in doubt. In order to entitle himself to a finding in his favor his evidence must not only be of greater convincing power, but it must be such as to satisfy or convince the minds of the jury of the truth of his contention. This idea, in some definite and certain form, must be given to the jury or the instruction will be incomplete and erroneous. *Gores v. Graff,* 77 Wis. 174, 46 N. W. 48; *Pelitier v. C., St. P., M. & O. R. Co.* 88 Wis. 521, 60 N. W. 250; *Guinard v. Knapp-Stout & Co. Co.* 95 Wis. 482, 70 N. W. 671; *Curran v. A. H. Stange Co.* 98 Wis. 598, 74 N. W. 377; *Knopke v. Germantown F. M. Ins. Co.* 99 Wis. 289, 74 N. W. 795; *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215, 78 N. W. 442; *Bowe v. Gage, ante,* p. 245, 106 N. W. 1074. This idea was nowhere given to the jury in the charge before us, and the omission was fatal.

The court defined ordinary care in connection with the seventh question as "such care as boys of the age, intelligence, and experience of the plaintiff usually exercise under similar circumstances." This instruction is complained of as erroneous because it does not carry the idea that the care used must

be the care ordinarily used by the great mass of boys or by the class of ordinarily careful boys. The instruction would have been more exact had it contained some words of this import, but under the decisions of this court we think it must be held that it fairly contains that idea, and hence is not erroneous. *Coppins v. Jefferson,* 126 Wis. 578, 105 N. W. 1078; *Pumorlo v. Merrill,* 125 Wis. 102, 103 N. W. 464.

The court gave the following general instruction:

"You are further instructed that the danger incident to the feeding of the straightening rolls of the machine, considered apart from the added dangers, if any, arising from the presence of the rough edges or slivers on the bars of brass, were open and obvious and are presumed to have been comprehended by the plaintiff, and in respect to which he assumed all risks."

This instruction, while doubtless correct as a general proposition, had no legitimate bearing on any question of the special verdict except the seventh, nor would it have any bearing on the seventh question which would be obvious to the jury unless it were explained to them that assumption of risk was a form of contributory negligence or want of ordinary care. No such explanation was made and the instruction seems therefore to have been misleading rather than helpful.

Passing to a consideration of the verdict, we think it must be said that it is not happily framed. After the elimination of the question of the lack of the guard from the case the issues were simple and may be stated as follows: (1) Was the plaintiff set at work at the machine by the defendant? (2) Was the defendant guilty of negligence in failing to warn the plaintiff of the danger resulting from the occasional presence of slivers? (3) If so, was such failure to warn the proximate cause of the accident? (4) Did the plaintiff assume the risk or was he guilty of contributory negligence? In this statement of the issues it is not intended to indicate that the issues should be submitted to the jury in this form, but

simply that these were the ultimate issues to be covered by the questions of the verdict. Turning to the verdict, it is at once seen that the second question relates rather to an evidentiary matter than to one of the material issues. The issue was whether the plaintiff did his work with ordinary care; the question whether he did it as other men did was evidentiary only.

The third question asks the jury whether the plaintiff knew that there were liable to be slivers and rough edges on the bars of brass. The coupling of these two elements together in the question was prejudicial to the plaintiff in a high degree. He admitted that he knew of the rough edges, but denied that he knew of the liability of there being slivers on the edge. Here was really the crux of the case. If he knew that slivers were liable to come at any time, it is difficult to see how it could be said that he did not assume the risk, and yet the two matters were coupled together in the question as. if they were identical, so that the jury could not, by a single categorical answer, separate them.

Again, the verdict on its face is inconsistent. By their answers to questions 3 and 4 the jury found that the plaintiff knew that there were liable to be slivers on the bars and ought to have known of the danger of his glove or hand being caught on them. If these were the facts, he undoubtedly assumed the risk of the danger. On the other hand, the jury found by their answer to question 7 that he was not guilty of any want of ordinary care which contributed to the injury. Assumption of risk is held by this court to be a form of contributory negligence, and in the absence of any instruction limiting the scope of the question (and there was none in this case), a general finding of absence of contributory negligence includes the assumption of risk as well. So the verdict by necessary construction finds both ways on the question of assumption of risk. It is quite difficult also to see how the answers to questions 4 and 5 can be reasonably reconciled. The findings are

Anderson v. Chicago Brass Co. 127 Wis. 273.

that plaintiff ought to have known that there was danger of his hand or glove being caught, but that the defendant ought not to have known that there was danger of the plaintiff's hand being drawn into the rolls as it was. Just why the plaintiff, a boy of sixteen, should be charged with knowledge of the danger that his hand might be caught, and the employer should not be charged with knowledge of the danger of the plaintiff's hand being drawn into the rolls, is not very apparent.

There are a large number of rulings upon evidence which are complained of. We shall not undertake to review them in detail. The plaintiff attempted to show by various questions asked of experts that the machine was a dangerous machine, or that it was so regarded, or that boys were not usually set at work upon it for that reason, and evidence of this character was excluded. The rulings upon this class of evidence were correct. The question whether the work was so dangerous as to require the giving of a warning was a question to be solved by the jury from the facts and circumstances in evidence. It was not a subject on which the opinion of experts was admissible. *Olwell v. Skobis,* 126 Wis. 308, 105 N. W. 777. In this connection attention is called to a ruling upon evidence adverse to the defendant, which of course is not here for review but which will probably arise upon another trial, and hence may be properly referred to in order to avoid error on such new trial. The plaintiff took the testimony of Schmelling, the foreman, under sec. 4096, Stats. 1898, before trial, and was allowed, against objection, to introduce and read the same upon the trial, although Schmelling was present and was afterwards examined as a witness. Schmelling was not an officer of the defendant, but simply an employee. This court has held such depositions inadmissible when the employee is present in court. *Hughes v. C., St. P., M. & O. R. Co.* 122 Wis. 258, 99 N. W. 897.

*By the Court.*—Judgment reversed, and action remanded for a new trial.