Hamann, Administratrix, Respondent, vs. Milwaukee
Bridge Company, Appellant.

*February 24—March 20, 1906.*

*Master and servant: Negligence: Personal injuries: Fellow-servants:
Incompetency: Evidence: Vice-principal: Assumption of risk:
Court and jury: Efficient cause of injury: Conjecture: Opinion
evidence: Admissibility: Experts: Discretion: Appeal and error.*

1. A mere foreman engaged with a crew of assistants, supplied with suitable material and appliances, performing a mere detail of the master's business—removing a machine from a car to the factory,—is a fellow-servant of the members of the crew, and the master is not liable for his fault in failing to choose a proper plan for the removal of the machine, or in omitting to

exercise due care to inform his assistants of the danger of the operation.

2. Incompetence, in the law of negligence, means want of ability suitable to the task, either as regards natural qualities or experience, or deficiency of disposition to use one's abilities and experience properly.

3. In an action against a master for the negligent killing of an employee it appeared, among other things, that the deceased was set at work under the direction of a foreman to unload a heavy machine from a railway car; that the foreman was one of the master's most trusted employees, thirty-seven years old, and had occupied his place of trust and confidence for several years; that at the time of the occurrence he had forty or fifty men under his general charge; that he had a general knowledge of heavy machinery and the manner of moving the same; and that there was nothing in the testimony to suggest incompetence, or impropriety in selecting him to unload the machine. *Held*, that the evidence was insufficient to show that the foreman was incompetent for the work or that the master was negligent in placing the foreman in charge of the work.

4. One in charge of the entire business of a master as general manager is a vice-principal.

5. Where, prior to an accident causing the death of a servant, a general manager of a master arrived on the ground while servants were employed in unloading a heavy machine from a freight car according to plans formulated by a foreman in charge, and assumed charge of the work, the master is chargeable with his knowledge and approval of the manner the work was done the same as if the manager had laid out the plan for the work at the outset, and cannot escape responsibility for what occurred upon the plea that the negligence was that of a foreman—a fellow-servant.

6. In such case the general manager, being chargeable with superior knowledge, when he saw the impropriety of moving the machine without some efficient means to insure against the tipping over which caused the servant's death, should either have stopped further progress until the proper remedy was applied, or have notified the servant of the danger, and, failing so to do, the question of whether there was actionable fault in those regards, or whether such danger as existed in the manner of doing the work adopted was open and obvious to an ordinary man, so that the servant and the master stood on the same plane, were questions for the jury.

7. In an action for the negligent killing of a servant, under the evidence, stated in the opinion, the jury is *held* to have had noth-

ing to guide it except merest conjecture as to how the accident happened, and that therefore there was no efficient basis for a verdict.

8. In an action for the death of a servant, happening while unloading a heavy machine from a freight car, it is error to allow opinion evidence as to whether the manner of moving the machine was proper. Such evidence is *held* to have invaded the province of the jury.

9. Opinion evidence, proper to be given as to the very point the jury is to decide, is confined to cases where such point is clearly within the field of expert evidence and the opinions offered are based on undisputed facts, or assumed facts warranted by the record.

10. The rule allowing opinion evidence as to whether a particular situation is perilous does not extend beyond those situations where the jury, after having all the facts presented to them as clearly as practicable, cannot form an opinion which is as reliable as that of an expert.

11. The scope of expert evidence is not restricted to the field of "science, art, or skill," technically speaking, but extends to every subject in respect to which one may derive, by experience, special and peculiar knowledge.

12. When evidence is excluded because the subject of inquiry is a matter of common knowledge, the real reason for the exclusion is that it is not expert evidence at all.

13. The question of the admissibility of expert evidence as it arises in practice is in the field of competency, and hence the ruling of the trial court thereon, in any case, should not be disturbed except where it appears to be erroneous.

Appeal from a judgment of the superior court of Milwaukee county: J. C. Ludwig, Judge. *Reversed.*

Action to recover for a personal injury.

Plaintiff's claim was this: October 7, 1903, the intestate, a common laborer, and to defendant so known, was in the latter's employ with other such laborers under the direction of Meyers, a foreman, performing the service of removing from a railway freight car to the floor of plaintiff's factory a punch machine weighing some 13,000 pounds, and placing the same on the floor of such factory. The machine was wholly of iron, seven feet long and six feet high. Portions thereof were a fly-wheel weighing about a ton and a geared wheel

weighing several hundred pounds, set in a line with the seven-foot base, which was thirty inches wide for about eight inches at each end, and between those points fourteen inches wide. A person familiar with handling such a heavy and peculiarly shaped article was required in order to take the same from the car without danger to unskilled assistants. Defendant, well knowing that, employed said Meyers to superintend the work, who was known to be incompetent therefor. By aid of his assistants he caused a skidway, eighteen feet long, to be constructed, reaching from the doorway of the car to the floor of the factory. It was composed of 12 x 9 inch timbers placed parallel to each other and about fifteen inches apart, fastened at both ends and blocked under the center. The crew placed the machine on the skidway by mechanical means, and put rollers thereunder. A rope was attached to the body thereof and to the car so as to control the motion of the same as it proceeded down the skidway. When everything was in readiness for the machine to so move, the foreman took a position in front thereof on the west side of the skidway, and the deceased, by direction, took a corresponding position on the east side. Another person was located behind the machine, to pick up rollers as they were released by the forward motion, and pass them to the persons in front whose duty it was to receive and place them before the machine, and guide them till firmly engaged thereby. The form of the machine was such that, except when the rollers were near the outer ends of the base, the bearing thereon was only about fourteen inches wide, and when all rollers were so circumstanced the weight of the machine was so distributed that the center of gravity was on a line perpendicular with a point outside the base. That fact was unknown to the deceased, and not apparent to an ordinary workman. It occurred during the progress of the work that the machine rested wholly on rollers located under the narrow part of the base, when by reason of the facts aforesaid it naturally tipped sideways and in the direction of plaintiff's

intestate.   Before he could, in the exercise of ordinary care, escape from the danger he was caught thereby and killed.

There were other allegations as to the existence of a statutory beneficiary, giving rise to a complete cause of action in case of the defendant being liable for the death, and allegations showing performance of all conditions precedent to the prosecution thereof.

Two causes of action were stated, one being predicated on negligence in putting an incompetent man in charge of the work, and in failing to warn the deceased of the danger because of the center of gravity of the machine falling outside of the narrow part of the base, and in moving the machine in an improper way and by an improper plan; and the other substantially thereon except the element regarding employment of an incompetent foreman.

The defendant put in issue the allegations of negligence, denied that a perpendicular line downward from the center of gravity fell outside the narrow base, and alleged that the length of the machine was five feet instead of seven feet; its width at the narrow part of the base to be seventeen instead of fourteen inches; the weight of the fly-wheel to be one half that alleged; the center of gravity of the machine to be in a plane perpendicular with the center of the base; and that it was moved with due regard to the safety of all the persons engaged in the work.

The evidence was to this effect: The age of the deceased, at the time of the accident, was about forty-nine years, and that of the foreman thirty-seven years.   The former was a common laborer, who had worked for defendant about two weeks and was a man of ordinary intelligence, and the latter had been in defendant's employ some over two years.   He had charge of forty to fifty men.   He had never prior to the accident moved or assisted in moving a machine precisely like the one in question, but was familiar, in a general way, with heavy machinery and the manner of handling the same.   No

accident had previously occurred in doing work under his charge. He was a man of considerable experience in handling heavy articles. On the day in question, by direction of the superintendent of defendant's business, he selected a crew of men to work under his charge in unloading the machine. He procured the necessary material and appliances therefor. Therewith the crew, under his direction, constructed a skidway of the character stated in the complaint. It was of sufficient strength for the purpose for which it was designed. It was firmly secured at both ends and supported in the middle so as to bear up the machine without being displaced in any respect. The plan of the work was wholly laid out by the foreman. He first caused the machine to be placed in proper position to pass out the door of the car onto the skidway. It was then raised and four or five rollers were placed thereunder. They were four feet long or over and four to six inches in diameter. A rope was attached to the machine and the free end was then carried back through the car, down and twice around the truss thereof and thence to the hands of one of the assistants, charged with the duty of releasing it slightly, at intervals, as directed to do so, when it was desired to move the machine forward. The foreman and the deceased took positions in front of the machine, one being on each side of the skidway, for the purpose of replacing rollers thereunder as they were released at the rear and passed forward by a person located there for that purpose. The machine weighed about 6,000 pounds. From the base to the top of the frame it was five feet, from the former to the top of the geared wheel it was about five feet and ten inches. It was five feet long at the base, thirty inches wide at the ends thereof for a distance of about seven inches, and otherwise it was sixteen inches wide. The base was hollow. The weight was so distributed that the center of gravity was about at the intersection of a line passing through the machine widthway two feet from one end and three from the other, and a line passing

through lengthwise in the middle, both lines being about forty inches above the bottom. It could not tip over without being turned from an upright position sufficiently to move the center of gravity to one side a distance of about eight inches. The exact situation in respect to such center was not observable by ordinary observation by reason of the hollow base, which was obscured. All members of the crew worked together in preparing to move and in moving the machine. It was transported successfully about halfway down the skidway, when Mr. Fitzsimmons, the superintendent of the business, came upon the scene. He immediately observed that one of the rollers was not exactly in proper place, and directed the foreman's attention thereto. Thereupon, the latter, with the assistance of deceased, remedied the matter. The man in charge of the rope, by direction, then released it sufficiently to allow the machine to move forward a short distance. As the work proceeded and the foreman and deceased were holding a roller in position for the advancing machine to engage it, the machine commenced slowly to tip toward the east. The superintendent, who had remained by from his aforesaid advent upon the scene, watching the progress of the work, first observed the tipping of the machine and immediately thereupon called out the danger. The deceased instantly side-stepped to escape from the reach of the machine, but, by mistake, proceeded in the wrong direction, resulting in his being struck and killed. The skidway on the side of the tipping did not settle or move out of place in any respect. The safety rope, so far as observed, did not fail in any respect to serve the purpose for which it was designed. There was no disturbance at any point connected with the movement of the machine, so far as any one observed, causing it to fall. Neither the foreman nor any one present was able to explain the occurrence after it happened. There was evidence that the base of the machine should have been skidded so as to afford a broader rest upon the rollers. Expert evidence was allowed under objection,

that the way the work was done was dangerous. There was no evidence that it was a faulty manner in any respect except in that a false base was not constructed to give broader support to the machine. As to whether the method of moving it was proper the evidence was conflicting. Though there was evidence that the machine, supported only on the narrow base, would have a tendency to tip over, it was established that the center of gravity was on a line perpendicular with the center of the base as before indicated.

At the close of the evidence there was a motion for a directed verdict in favor of the defendant, which was denied.

The cause was submitted to the jury for a special verdict with this result:

(1) The deceased was killed as alleged in the complaint. (2) The method adopted of moving the machine was not reasonably safe. (3) The foreman was incompetent. (4) Defendant knew that fact. (5) It ought, in the exercise of ordinary care, to have known it. (6) It was guilty of a want of ordinary care in entrusting the work to Meyers. (7) Such want of ordinary care was the proximate cause of the intestate's death. (8) The superintendent ought to have observed the dangerous manner in which the machine was being moved. (9) The deceased is not chargeable with knowledge that the manner of work was dangerous. (10) The superintendent ought to have known that deceased did not comprehend the danger. (11) The superintendent was guilty of a want of ordinary care in not warning deceased of the danger. (12) Such want of ordinary care was a proximate cause of the injury. (13) The deceased is not chargeable with knowledge that the foreman was incompetent. (14) The deceased was not guilty of any want of ordinary care contributing to his injury. (15) The amount of recoverable loss, if any, is $3,500.

There was a motion to change the second finding to the affirmative, to change the third, fifth, sixth, seventh, eighth,

tenth, eleventh, and twelfth findings to negatives, and to change the thirteenth and fourteenth findings to affirmatives, because the evidence established the facts so to be, and for judgment in defendant's favor. The motion was denied. There was also a motion on behalf of the defendant on several grounds, to set aside the verdict and for a new trial, which was denied. Judgment was thereupon, on motion, rendered in plaintiff's favor and defendant appealed.

For the appellant there was a brief by *Vilas, Vilas & Freeman,* and oral argument by *E. P. Vilas.*

For the respondent there were briefs by *Houghton & Neelen,* and oral argument by *F. W. Houghton.*

MARSHALL, J. Meyers was a fellow-servant of deceased. That seems plain. He was a mere foreman engaged with a crew of assistants, supplied with suitable material and appliances, in performing a mere detail of appellant's business. It is not claimed, as we understand it, that he was guilty of any fault other than in failing to choose a proper plan for accomplishing the removal of the machine from the car, and omitting to exercise due care to acquaint his assistants of the dangers of the operation, in the way it was done. Those were mere incidents of the work, the same as constructing the skidway, arranging the rope to control the movement of the machine, locating the men in their proper places to assist in the work, and directing them generally in and about the same. In all cases of that sort the foreman is a mere comrade with the men under him. The fault, if there is any, so long as there is no precedent want of care in his employment, is that of a fellow-servant, for which the master is not liable. Such fault is one of the ordinary risks assumed by an employee as a part of his contract. The facts of this case are so clearly within that principle, and the rule itself is so familiar, that it seems useless to discuss the matter. The following cases are directly in point: *Peschel v. C., M. & St. P. R. Co.* 62 Wis. 338, 21

N. W. 269; *Portance v. Lehigh Valley C. Co.* 101 Wis. 574, 579, 77 N. W. 875; *Wiskie v. Montello G. Co.* 111 Wis. 443, 87 N. W. 461; *Williams v. North Wis. L. Co.* 124 Wis. 328, 102 N. W. 589; *Alaska M. Co. v. Whelan,* 168 U. S. 86, 18 Sup. Ct. 40.

As to whether the foreman was incompetent, or if he was, defendant was negligent in directing him to do the work, we fail to find any warrant for the verdict independently of what occurred on the occasion in question. It is undisputed that he was one of the most trusted employees engaged in appellant's large business. He had forty or fifty men under his general charge at the time of the occurrence. That place of trust and confidence he had filled for a considerable period of time. He was thirty-seven years of age. As indicated in the statement, he had a general knowledge of heavy machinery and the manner of moving the same, and there was nothing in his history to suggest incompetence, or impropriety in selecting him to unload the machine. Incompetence, in the law of negligence, means want of ability suitable to the task, either as regards natural qualities or experience, or deficiency of disposition to use one's abilities and experience properly. *Maitland v. Gilbert P. Co.* 97 Wis. 476, 72 N. W. 1124; *Kliefoth v. N. W. I. Co.* 98 Wis. 495, 74 N. W. 356. The evidence here, as to occurrences up to the time the foreman was directed to do the work, not only does not prove he was incompetent for the task, but rather proves affirmatively the contrary. We are unable to find a scintilla of evidence of any circumstances calculated, reasonably, to put appellant on guard against doing what it did in that regard. It had good reason to believe that he possessed all the ability, the experience, and the disposition requisite to the proper performance of the undertaking.

Aside from the circumstance of the superintendent coming upon the ground before the accident in ample time to have remedied the dangerous way the machine was being

moved, if there were fault in that regard, either by counteract-ing, in some way, the tendency thereof to tip over by a mod-erate disturbance of the same, if such tendency existed, or by specially warning the employees of the danger, no cause of action was established by the evidence. Fitzsimmons was not a foreman. He did not engage in any way as a fellow-serv-ant in moving the machine. He had charge of the entire business as general manager and was a vice-principal most clearly. He arrived on the scene, as indicated in the state-ment, when the machine was about halfway down the incline. He saw the whole situation at a glance, and must have then comprehended whatever dangers were incident to the work in the way it was being conducted, noticeable to a man of ordi-nary care circumstanced as he was. In any event, he is chargeable with having so comprehended, and that is imputa-ble to the defendant. As soon as he arrived, as we have seen, he directed replacement in proper position of one of the roll-ers, and thereafter remained by, closely observing the work, till the accident occurred. He was the first to note the tipping of the machine and to give notice thereof to those who were within the region of danger. Prior thereto he made no sugges-tion of danger in continuing the work as he found it in prog-ress. It seems that he virtually took charge thereof upon his arrival, but in any event he could not stand by, as he did, and defendant escape responsibility for what occurred upon the plea that the negligence, if negligence there were, was that of the foreman, a fellow-servant. The authority cited to our at-tention with much confidence on this, *Ziegler v. Day,* 123 Mass. 152, does not appear to be at all in point. The super-intendent, there spoken of, was a mere foreman, the principal was not on the ground at the time of the accident, or prior thereto, so as to be chargeable with knowledge of the manner the particular work was done which led to the happening of the accident. Not so here, as indicated.

Here the principal in the person of Fitzsimmons was on

the ground. Through him it knew and approved of the manner of the work before the accident. It is, therefore, chargeable the same as if its superintendent had laid out the plan for doing the work at the outset, leaving as matter of detail, only the execution thereof.

The question of whether such danger as existed in the manner of work adopted was open and obvious to an ordinary man, so that the deceased and appellant stood on the same plane, was at least for the jury. There is reasonable ground for saying the machine was of such shape and character, particularly on account of the hollow base, the extent thereof, and the location of the center of gravity some forty inches above the same, or within about twenty inches of the top of the framework, that an ordinary man might not have comprehended the extent of disturbance liable to cause it to tip over, or the danger of such disturbance occurring under the circumstances, while such danger might have been plain, or reasonably so, to one familiar with such a machine. If Fitzsimmons, as one chargeable with such superior knowledge, saw or ought to have seen the impropriety in moving the machine without some efficient means to insure it against tipping over, he should have called attention thereto as soon as he had reasonable opportunity therefor, and either stopped the further progress of the work till the proper remedy was applied, or notified those who were at the work of the danger. He did neither, so far as appears. By his attitude he approved in every respect of the manner the work was being done. That might well have been regarded as an assurance of safety by the inexperienced men. Upon the trial he still insisted that the method of work was proper. Whether there was actionable fault in that regard, it seems, was a fair jury question.

Manifestly, the result on the last point treated is not material, unless there is evidence warranting a finding that the machine tipped over by reason of the rollers being only under the sixteen-inch base. Bearing in mind that, according to the

evidence, there was no disturbance whatever of the east side of the skidway preceding or during the progress of the accident; that at the instant the machine began to tip and until it was wholly out of balance, the skidway was in perfect form, and the rollers likewise, and that the event took place without anything suggesting the probability of the thing happening before it occurred, or anything explaining it thereafter, it stands, so far as explained by witnesses, as a miraculous occurrence. One may conjecture how it occurred, but that is all.

Counsel for respondent comprehended the difficulty suggested at the time of drafting the complaint and solved it, seemingly, upon the theory, in good faith, that when the machine rested wholly on the narrow base the center of gravity was on a line perpendicular with a point outside thereof. However, a little reflection is sufficient to convince one that it could not have been on a line perpendicular with a point outside of the base on both sides. Therefore it must be assumed that the pleader supposed the machine was much heavier on one side than on the other: of which there is no support whatever in the evidence. One or two witnesses testified, in effect, that the center of gravity was somewhat on a balance so that a slight displacement of the machine was sufficient to disturb its equilibrium, and so counsel for respondent now claims; but we find no evidence whatever to support any such theory. The pictorial representation of the machine, in connection with the evidence, shows beyond any room for controversy that it was perfectly balanced, one side being the same weight as the other, with the center of gravity located some forty inches above the base and on a vertical line from the center thereof.

It does not require evidence from the mouths of witnesses to picture to the mind the position the machine must necessarily have assumed before the vital gravity point could have been on a line perpendicular with one outside the base, throw-

ing the machine so out of balance as to cause it to tip over. That is a matter of such exact demonstration that any amount of evidence from the mouths of witnesses to the contrary could not change it. It is one of those situations which is not only unimpeachable but will impeach all evidence contradicting it.

Assuming, as we must, from the evidence, that the side of the skidway remained in proper position, the highest point on the machine: the top of the geared wheel.must have moved to the east about a foot, the top of the frame not much less, and the west projection of the base raised some four inches, before the apparatus became out of balance. As it weighed nearly 6,000 pounds it can easily be seen it would not have been possible to tip it over by any disturbance the evidence discloses occurred.

Each side of the machine weighed nearly 3,000 pounds. It would not be a very easy task for one to upset such a body so located. If the skid on the side towards which the machine tipped had settled a very few inches, what occurred would have been inevitable. However, as the case stands, as before indicated, the occurrence is wholly unexplained. The jury had nothing to guide them but the merest conjecture. That furnishes no efficient basis for a verdict. *Hyer v. Janesville,* 101 Wis. 371, 77 N. W. 729; *Musbach v. Wis. C. Co.* 108 Wis. 57, 84 N. W. 36; *Mueller v. Milwaukee,* 110 Wis. 623, 86 N. W. 162.

As said in the first case above cited, it is incumbent on the plaintiff, in a case like this, to show with reasonable distinctness how and why the accident occurred. It will not do to merely present to a jury a state of facts involving a claim for damages for a personal injury, and relations of the parties which would, under some circumstances, render the defendant liable, without any proof whatever, or any reasonable definite proof, of the existence of such circumstances, and then leave it to the jury to guess whether they did or did not exist in fact, and to base a verdict upon the result. Unless the evi-

dence, in respect to such a matter, is sufficient, clearly, to re-
move the truth of the matter from the realms of mere con-
jecture into those of reasonable probability, no question in
respect thereto is presented for solution by the jury,—only a
question of law for the court.

It was error to allow opinion evidence as to whether the
manner of moving the machine was proper. This has refer-
ence to considerable expert evidence permitted under objec-
tion, that the work was done in a dangerous way. That in-
vaded the province of the jury. There are instances in which
opinion evidence may properly be given as to the very point
the jury are to decide. *Maitland v. Gilbert P. Co.* 97 Wis.
476, 72 N. W. 1124; *Lyon v. Grand Rapids,* 121 Wis.
609, 619, 99 N. W. 311. They are confined to cases where
such point is clearly within the field of expert evidence and
the opinions offered are based on undisputed facts, or as-
sumed facts warranted by the record.

Where a matter relates to whether a particular machine,
place, or mode of doing business is dangerous, and such dan-
ger is not sufficiently latent but what the jury can as well
form a reliable opinion in respect thereto as an expert, when
put in possession of all the facts causing the peril, and that
can readily be done, opinion evidence is not admissible. This
court has, quite recently, on two occasions, so ruled. *Olwell
v. Skobis,* 126 Wis. 308, 105 N. W. 777; *Anderson v. Chicago
B. Co., ante,* p. 273, 106 N. W. 1077.

The rule allowing opinion evidence as to whether a par-
ticular situation is perilous in some cases, is quite familiar,
but it will be found, it is thought, on examination of the au-
thorities, not to extend beyond those situations where the jury,
after having all the facts presented to them as clearly as prac-
ticable, cannot form an opinion which is as reliable as that
of the expert. The following are examples of where such
evidence has been held proper, or illustrate the principle of
the rule: *Innes v. Milwaukee,* 103 Wis. 582, 79 N. W. 783;

*Daly v. Milwaukee,* 103 Wis. 588, 79 N. W. 752; *Ogden v. Parsons,* 23 How. 167; *Transportation Line v. Hope,* 95 U. S. 297; *Spring Co. v. Edgar,* 99 U. S. 645; *Union Ins. Co. v. Smith,* 124 U. S. 405, 8 Sup. Ct. 534; *Lewis v. Seifert,* 116 Pa. St. 628, 11 Atl. 514; *Huizega v. Cutler & S. L. Co.* 51 Mich. 272, 16 N. W. 643; *Louisville, N. A. & C. R. Co. v. Frawley,* 110 Ind. 18, 9 N. E. 594; *Pullman P. C. Co. v. Harkins,* 55 Fed. 932, 5 C. C. A. 326. Such evidence as that under consideration is not inadmissible merely because the subject matter is outside of the field of "science, art, or skill" technically speaking. The scope of expert evidence is not thus restrained. It extends to every subject in respect to which one may derive, by experience, special and peculiar knowledge. *Schwantes v. State, ante,* p. 160, 106 N. W. 237; Lawson, Exp. Ev. 239; 1 Wharton, Ev. (3d ed.) § 44. When the evidence is excluded because the subject of the inquiry is a matter of common knowledge, as it sometimes is, the real reason of the exclusion is that it is not expert evidence at all. It is not all opinion evidence that is expert evidence nor is all the latter admissible, as one may give an opinion as to a matter known to people generally. The opinion must fall within the field of expert evidence to be admissible. In short, it must be an expert opinion, and then it is not necessarily admissible. It should be excluded, as we have seen, as to some subjects, when the jury can be afforded an opportunity to form an opinion as intelligent and reliable as the expert, and when that is clearly so it is harmful error to admit it.

Just when the rule above discussed applies and when it does not, strictly on principle, is somewhat difficult to determine. The question as it arises in practice is in the field of competency, and therefore the ruling of the trial court, in any case, should not be disturbed except where it appears pretty clearly to be erroneous. Such appear to be the rulings under consideration in the light of the recent decisions of this court

to which we have referred. They must be read, however, having regard to the rule that such opinion evidence, in a proper case, is permissible. There was no difficulty whatever, in the instances in question, in explaining to the jury all of the elements rendering the manner of doing the work adopted perilous, which were not matters of common knowledge. Placed in possession of such elements, the result was governed by natural laws of a familiar character. The proof should have been made in that way with other of the general manner, if there be such, of doing like work, and then it should have been left to the jury to determine whether ordinary care was exercised in respect to the method adopted for moving the machine or not.

The general result is that the judgment appealed from must be reversed and the cause remanded for a new trial.

*By the Court.*—So ordered.