ZARNIK, Respondent, vs. C. REISS COAL COMPANY, Appellant.

*October 15—November 5, 1907.*

*Master and servant: Negligence: Personal injuries: Trial: Nonsuit: Directed verdict: Special verdict: Inconsistent findings: Sufficiency of questions submitted: Refusal to submit questions: Assumption of risk: Unavoidable accidents: Instructions to jury: Prejudicial error: Reception of evidence: Expert testimony: Competency.*

1. In an action by a servant for personal injuries the evidence, stated in the opinion, is *held* sufficient to sustain findings for the plaintiff, and to sustain the denial of defendant's motions for nonsuit, directed verdict, amendment of the verdict, and judgment notwithstanding the verdict.

2. In an action by a servant for personal injuries caused by a defective lever fastening the door of a coal car, a finding of the

special verdict, on sufficient evidence, that a proper inspection
would have revealed the defect in time for defendant to have
repaired it or taken the car from the track, is *held* not incon-
sistent with findings that one of plaintiff's witnesses had not
informed defendant's foreman, prior to the injury, of the defect
in the lever, and that the defendant had no actual notice or
knowledge of the defective condition of the lever in time to
have repaired it or to have taken the car off the track before
the plaintiff was injured.

3. In an action by a servant for personal injuries caused by a de-
fective lever fastening the door of a coal car, the court, as part
of a special verdict, submitted questions whether the plaintiff
knew or ought to have known of the defect in the lever, and
also whether the plaintiff was guilty of any want of ordinary
care contributing to the injury.   The jury were instructed that
assumption of risk was a species of contributory negligence.
*Held*, that the questions submitted fully covered the question of
assumption of risk, and it was not error to refuse to submit an
additional question, whether a person of ordinary care and pru-
dence ought to have anticipated that an accident such as hap-
pened to the plaintiff was liable to occur.

4. In such case the court also fully instructed the jury on the sub-
ject of unavoidable accidents, and it was *held* no error to refuse
to submit, as part of the special verdict, an inquiry whether the
injury received by the plaintiff was due to such an accident.

5. In an action for personal injuries to a servant it is *held* that the
instructions given did not inform the jury of the effect of their
answers to the questions presented in the special verdict.

6. In an action by a servant for personal injuries caused by a de-
fective lever fastening the door of a coal car, it was not error
for the court to instruct the jury that it was the duty of the de-
fendant to make a proper inspection where, as shown by the
evidence, the inspection made was quite general, and from it
the jury might have found that, if a proper inspection had been
made, it would have revealed the defect in the lever.

7. In an action by a servant for personal injuries caused by a de-
fective lever fastening the door of a coal car, the court, in sub-
mitting to the jury the question of ordinary care on the part
of the plaintiff, instructed them that in answering this question
they were to consider, among other things, whether the cause
of the opening of the door was or was not an unavoidable ac-
cident, and that if such cause was unknown, or could not be
definitely ascertained, then so far as the case was concerned
they should find it was such an accident.   The jury found on
sufficient evidence that the lever was defective and that the de-

fendant ought to have known of such defect in time to have re-
paired it or taken the car off the track, and in favor of plaint-
iff on all facts necessary to entitle him to recover by reason of
such defect.  No effort was made by defendant to show that
the lever was not defective or that such defect was not the
proximate cause of the injury, but it did offer proof of inspec-
tion on the day before the injury.  The jury were instructed
that when a thing is shown to be under the management of
the defendant or its servants, and the accident is such as, in
the ordinary course of things, does not happen if those who
have the management use proper care, it affords reasonable
evidence, in the absence of explanation by the defendant, that
the accident arose from want of care.  *Held*, that this instruc-
tion, whether applicable to the facts or not, was not prejudicial
to defendant.

8. The scope of expert evidence is not restricted to matters of
   science, art, or skill, but extends to any subject in respect to
   which one may derive by experience special and peculiar knowl-
   edge.

9. Opinion evidence may properly be given as to the very point the
   jury are to decide, when such point is within the field of expert
   evidence, and the question is based upon undisputed facts or as-
   sumed facts warranted by the record.

10. In an action by a servant for personal injuries caused by a de-
    fective lever fastening the door of a coal car, answers to ques-
    tions: "If the handle is perfectly straight, what effect does that
    have on the slide?" and "Would a car door be reasonably safely
    locked if the catches held the latches on the door by half an
    inch, and the car was subject to the general uses to which it is
    put in running upon these trestles and making the turns?" are
    *held* not to have invaded the province of the jury, where the
    witnesses interrogated were machinists of wide experience, had
    made thorough examination of the car, and understood the rela-
    tions of all its parts and the principles upon which they worked.

APPEAL from a judgment of the circuit court for Mani-
towoc county: MICHAEL KIRWAN, Circuit Judge.  *Affirmed.*

This action was commenced by the plaintiff, who was en-
gaged in the coal yards of the defendant in the city of Mani-
towoc, Wisconsin, to recover damages for personal injuries
sustained by him on Monday, July 18, 1904.  At the time of
the injury the defendant was engaged in running cars of coal

over its tracks in its yard upon a trestle some thirty feet
above the place where plaintiff was at work, unloading soft
coal from the steamer Siberia, and several cars were being
operated along the tracks for that purpose. The plaintiff
was a laborer and had been working around the coal docks
for several years. He was at work on the ground level un-
der the track where the cars were being operated. There
was a cable in constant motion, running from west to east,
turning a loop at the end of the dock, and running thence on
what was called track No. 4, along the south side of the
dock, then coming to another loop or curve and turning to-
ward the north until it came upon the straight track running
east and called track No. 3. The cars are gripped on the
cable, and the cable keeps turning around the loops and takes
the cars all around the dock and around the curve or loop
upon the trestlework. The rails on which the cars run are
twenty-seven inches apart. The cars are made to a bevel;
that is, the top is wider than the bottom. At each side of
the car is a door and at each side of the door are two latches,
and there are two hooks at the bottom of the car into which
the latches go. There is a grip at the front of the car which
grips the cable; also slides back of the car and levers. The
slides go underneath the car and the hooks fasten into the
slides below. When the slides work, the hooks work on the
slides and release the door. There is a plank over the top
of the door on which the hinges are placed, and also one
hinge from the bottom of the car, through which is a bolt
upon which the door swings. The purpose of the catches
is to hold the door closed, and do hold it closed when the
latch on the car door is in the hook. Underneath the car on
each side is what is called a slide. Hooks are placed on
this slide and are attached to the lever at the rear of the car.
The door opens with the lever at the rear and also with the
grip or tripper which is underneath the car. When the slide
moves forward the catches move to the back end and thus re-

lease the door. When the slide is moved backward that throws the hooks ahead again and closes the door. Every twelve feet are two planks in which there are holes, also bolts, and when the tripper gets over this block it opens the car— releases the door. The cars are also provided with handles, the purpose of which is to dump the coal in case there are no dump planks. This handle is placed in the back end of the slot of the slide. It fits pretty tight, and is attached to the back of the car by a kind of clamp into which the handle fits with a bolt through it. The handle turns at a point where it connects with the car, and at the point where attached to the car it is bent off on an angle to regulate the slide so that the hook will catch well on the latches. At the time of the injury this handle was bent about one and one-half inches, and the actual bearing of the catches on the latches of the door was not more than about half an inch. The plaintiff was at work at the hard-coal shed at a point just beneath the trestle where the cars turned from track No. 4 to No. 3, and the door of the car, by reason of being improperly locked on account of the defective lever, opened and dumped the coal upon plaintiff, causing the injury complained of.

The jury returned the following verdict:

"(1) Was the falling or dumping of the coal from car No. 14 upon the plaintiff caused by the opening or release of the left-hand door of the car when it was passing above the place where plaintiff was then working? A. (by the court). Yes. (2) At that time, was it the fact that the left handle or lever, which was at the back of the car and was used for dumping the car by hand, was not sufficiently bent at the point where it turns on a pivot so as to allow the slide to which the locks or catches are attached to spring back far enough for the catches to grasp and hold with reasonable safety the iron projections on the left door of the car? A. Yes. (3) Was the car, in the usual operation thereof, subjected to some degree of jarring or straining in passing over the loop or curve in the track above the place where plaintiff was working when injured? A. Yes. (4) If your answer to the second

question be 'Yes,' then was the defective condition of the lever, which your answer to the second question finds to have then existed, the cause of the opening or release of the left door when the car passed, or soon after it passed, over the loop and onto the track or trestle No. 3, and was just above the place where plaintiff was working when injured? A. Yes. (5) If your answer to the fourth question be 'Yes,' then, on the morning of the day on which plaintiff's injury occurred, and before it occurred, was defendant's assistant foreman, Adler, informed by defendant's employee, Julius Biermann, that the lever was defective? A. No. (6) If your answer to the fourth question be 'Yes,' then did defendant, through either of its proper representatives who were charged with the duty of inspecting and keeping the cars in proper condition and repair, have actual notice or knowledge of the defect in the lever in time to have repaired it or to have taken the car off from the track, in the exercise of ordinary care and diligence and before the plaintiff was injured? A. No. (6½) If your answer to the sixth question be 'No,' then if the defendant, through its said representatives, had exercised ordinary care and vigilance in such inspection, would said representatives or either of them have thereby learned of the defect in the lever in time to have repaired it or to have taken the car off from the track, in the exercise of the aforesaid degree of care and diligence and before plaintiff was injured? A. Yes. (7) If your answer to either the sixth question or to question 6½ be 'Yes,' then was the failure of the defendant, through its said representatives, to repair the defect in the lever, or to remove the car from the track before plaintiff was injured, the proximate cause of his injury? A. Yes. (8) If your answer to the fourth question be 'Yes,' then (1) did the plaintiff know, or (2) by the exercise of ordinary care on his part would he have learned, of the defective condition of the lever before he was injured? A. (1) Plaintiff did not know. (2) By the exercise of ordinary care he would not have so learned. (9) Was plaintiff guilty of any want of ordinary care on his part which contributed to produce his injury? A. No. (10) If the court shall be of the opinion that plaintiff is entitled to judgment in his favor, what sum will reasonably compensate him for his injury? A. $1,350."

Judgment for plaintiff upon the verdict was entered for the sum of $1,350, together with interest and costs. The defendant appeals and assigns error.

For the appellant there was a brief by *Vilas, Vilas & Freeman,* and oral argument by *E. P. Vilas.*

*E. L. Kelley,* for the respondent.

KERWIN, J. 1. The first contention made by appellant is that the court erred in denying defendant's motions for nonsuit, directed verdict, to amend the verdict, and for judgment notwithstanding the verdict. This argument involves the sufficiency of the evidence to support the findings of the jury. The negligence relied upon was the defective condition of the car, in consequence of which the car door became open at a point before the dumping place was reached and dumped the coal upon the plaintiff. The evidence tends to establish that the lever at the back of the car used for hand dumping did not have sufficient bend so as to admit of proper locking of the door latch of the car, in consequence of which, while the car was running upon the track, the door became open and suffered the load to dump upon plaintiff. There is evidence that a door latched or locked in the manner in which the car door in question was at the time of the injury was defective, dangerous, and liable to come open while the car was running upon the track; that the operation of the car on the track and around the curve or loop, and the strain, jar, and jerks incident to such operation, would cause the door thus improperly latched or fastened to open and dump the coal. The plaintiff produced Mr. Biermann, a witness, who testified that on the morning of the injury and before the car went out he informed the foreman of defendant, Mr. Adler, that the car was defective, and told him that "the hooks don't catch enough on the door," and in reply Mr. Adler said: "She is all right. Let her go." Mr. Adler denies this, and the jury found in answer to the fifth question that Mr. Bier-

mann did not inform Mr. Adler that the lever was defective. It is argued by counsel for appellant that this finding negatives any actual knowledge on the part of defendant, and that the jury found the alleged conversation between Biermann and Adler never took place, and that by the sixth question the jury found that defendant had no actual notice or knowledge of the defective condition of the lever in time to have repaired it or to have taken the car off the track before the plaintiff was injured. Counsel for defendant, therefore, concludes that because the evidence shows inspection on Saturday before the injury, and because of findings 5 and 6, the answer of the jury to question $6\frac{1}{2}$, to the effect that the representative of defendant by the exercise of ordinary care and vigilance would have learned of the defect in the lever in time to have repaired it or taken the car from the track, cannot be sustained, and hence the answer to question $6\frac{1}{2}$ should have been changed. We cannot agree with counsel in this contention. The answers to the fifth and sixth questions merely find that Biermann did not inform Adler of the defect in the lever. It does not appear that Biermann testified that he informed Adler that the lever was defective. He testified that he told him that he did not think the car was all right, and, on being asked why, said, "The hooks don't catch enough on the door." The jury found that Biermann did not inform Adler that the lever was defective, and this was strictly correct under Biermann's evidence. He simply informed Adler that he thought the car was not all right because the hooks did not catch enough on the door. Now, it is very clear from all the evidence that the jury would be warranted in finding that a proper inspection would have revealed the defect in the lever, to say nothing of the evidence of Biermann, which the jury by their findings did not necessarily discredit. So we think the position of counsel for appellant that the verdict is inconsistent as it stands, and that

the answer to question 6½ is not supported by the evidence and should be changed, is not well taken.

2. Error is assigned in the submission of questions 8 and 9 to the jury and refusal to submit the following:

"Under all the evidence in the case, and in view of the knowledge of the plaintiff of the manner and method of conducting the work of the defendant upon the dock where he was engaged when injured, ought a person of ordinary care and prudence to have anticipated that an accident such as happened to the plaintiff was liable to occur?".

It seems to us that questions 8 and 9 presented fairly the questions involved to the jury and more clearly than the request of defendant. They appear to have been answered intelligently by the jury, and we find no error in their submission nor in the refusal to submit the one requested by defendant.

The main contention of defendant under this head is that the question of assumption of risk was not fairly submitted to the jury. The question whether plaintiff knew or ought to have known of the defect in the lever was submitted to the jury in the eighth question, and whether he was guilty of any want of ordinary care contributing to the injury was submitted in the ninth question. These questions fully covered the assumption of risk, and the jury were charged that assumption of risk was a species of contributory negligence. It is also contended that the court should have submitted the question asked by defendant, namely, "Was the injury received by the plaintiff due to an unavoidable accident?" The jury were fully instructed upon this question, and no error was committed in refusing to submit it as a part of the special verdict. *Hennesey v. C. & N. W. R. Co.* 99 Wis. 109, 74 N. W. 554; *Johnson v. St. P. & W. C. Co.* 126 Wis. 492, 105 N. W. 1048.

3. A very vigorous attack is made upon the charge of the court by counsel for defendant. It is claimed in the first

place that the court informed the jury of the effect of their answers to the questions presented in the special verdict. After a careful examination of the charge we cannot find that any reversible error was committed in this regard, and after all that has been said upon this subject by this court further discussion would seem unnecessary. We call attention to *Banderob v. Wis. Cent. R. Co., ante,* p. 249, 113 N. W. 738, where the authorities are collected and discussed. The charge is also criticised because the court told the jury that it was the duty of defendant to make a proper inspection, on the ground that there was no evidence that the inspection was not proper, and counsel in his argument assumes that there was no question for the jury on this point. But in this we think counsel is in error. The inspection, as shown by the evidence, was quite general, and from it the jury might well have found that, if a proper inspection had been made, such inspection would have revealed the defect in the lever, if one in fact existed. The question whether or not proper inspection had been made, upon the evidence, was for the jury, and there was no error in the charge in that respect. The most serious question to our minds under this head is whether the court erred in that portion of the charge taken from the rule laid down in *Cummings v. Nat. F. Co.* 60 Wis. 603, 612, 18 N. W. 745, 20 N. W. 665, that "when the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." Whether this instruction was applicable to the facts in this case we shall not stop to consider, since we are convinced that it worked no prejudice to the defendant. In the first place it was given under the ninth question of the special verdict, respecting want of ordinary care on the part of the plaintiff, and the jury were told that in answering this question they

were to consider, among other things, whether the cause of the opening of the door was or was not an unavoidable accident, and that if such cause was unknown, or could not be definitely ascertained and determined, then so far as this case was concerned they should find that it was an unavoidable accident; but if they were satisfied that the door opened because of the defect in the lever, if such defect existed, then the cause is known and the accident did not result from an unknown cause. The court then gave the instruction from the *Cummings Case,* 60 Wis. 603, 612, 18 N. W. 742, 20 N. W. 665, above quoted, and followed it by the further instruction:

"I read that to you as assisting you in determining the law applicable to the question whether this opening of the door was or was not an unavoidable accident—whether it arose from an unknown cause or from a cause that can be traced and determined."

The jury found upon sufficient evidence that the lever was defective, and that defendant ought to have known of such defect in time to have repaired it or taken the car off the track, and found in favor of plaintiff all facts necessary to entitle him to recover by reason of such defect. The defect which caused the injury was left in no uncertainty by the verdict, but was traced to a known cause. No effort was made by defendant to show that the lever was not defective or that such defect was not the proximate cause of the injury. The defendant did offer proof of inspection on the Saturday before the injury, but it is obvious that the jury found that the defect existed and proper inspection had not been made, else the defect would have been discovered before the car was put on the track. So the instruction under consideration, whether applicable to the facts of the case or not, was not prejudicial, and therefore not reversible error.

4. Error is assigned because of the reception and rejection of evidence. The main contention under this head is

that expert testimony was improperly admitted. The expert was asked the following questions: "If the handle is perfectly straight, what effect does that have on the slide?" Also the following: "Would a car door be reasonably safely locked if the catches held the latches on the door by half an inch, and the car was subject to the general uses to which it is put in running upon these trestles and making this turn?" Other questions of similar import were asked. The witness was permitted to answer these questions over defendant's objections. It is urged by counsel for defendant that it was error to allow such answers, on the ground that they invaded the province of the jury; and *Hamann v. Milwaukee B. Co.* 127 Wis. 550, 106 N. W. 1081; *Olwell v. Skobis,* 126 Wis. 308, 105 N. W. 777, and *Anderson v. Chicago B. Co.* 127 Wis. 273, 106 N. W. 1077, are relied upon. The question turns on whether or not the evidence offered comes within the field of expert evidence. The scope of expert evidence is not restricted to matters of science, art, or skill, but extends to any subject in respect to which one may derive by experience special and peculiar knowledge. *Hamann v. Milwaukee B. Co., supra.* "Opinion evidence may properly be given as to the very point the jury are to decide," when such point is within the field of expert evidence, when the questions are based upon undisputed facts or assumed facts warranted by the record. *Maitland v. Gilbert P. Co.* 97 Wis. 476, 72 N. W. 1124; *Lyon v. Grand Rapids,* 121 Wis. 609, 99 N. W. 311. We think this rule was not violated by the admission of the evidence under consideration. *Cole v. Clarke,* 3 Wis. 323; *Daly v. Milwaukee,* 103 Wis. 588, 79 N. W. 752; *Stanwick v. Butler-Ryan Co.* 93 Wis. 430, 67 N. W. 723; *Northern S. Co. v. Wangard,* 123 Wis. 1, 100 N. W. 1066; *Olwell v. Skobis,* 126 Wis. 308, 105 N. W. 777; *Schwantes v. State,* 127 Wis. 160, 106 N. W. 237; *Hamann v. Milwaukee B. Co.* 127 Wis. 550, 106 N. W. 1081. The witnesses interrogated on the subject were machinists of wide expe-

rience. They had made thorough examination of the car and understood the relations of all the parts and the principles upon which they worked. It is quite clear that the jury could not judge as well as these experts respecting the safety of the defective lever, or whether a half-inch bearing of the catch was a sufficient locking.

We find no reversible error in the record.

*By the Court.*—The judgment below is affirmed.