BRENNAN, Appellant, vs. HEALY, Respondent.

*February 4—May 1, 1914.*

*Attorney and client: Contracts, express and implied: Trial: Submission of case to jury: Instructions: Harmless errors.*

1. In an action for the value of services rendered, it is *held* that under the evidence the trial court properly charged the jury and submitted the case upon the theory that plaintiff claimed under an express contract of employment as well as upon the theory that an implied contract was claimed; and that the frequent use of the terms "contract of service" and "employment" in the charge was not misleading.

2. Except as to certain special issues, such as fraud and the like, the jury in a civil action are required to be convinced or satisfied of a fact by the preponderance of the evidence only, and it is error to charge them that the evidence must be "clear and convincing."

3. Such error will not be regarded as prejudicial, however, where the trial was fairly conducted and the charge as a whole was favorable to the party complaining, and where the evidence in his favor upon the issue in question was very slight or practically negligible, so that there would be little probability of a different result upon another trial.

4. Where, at the close of the charge to the jury, defendant's counsel, seeking to eliminate possible error from the record, called attention to a supposed inaccuracy in the charge in a statement of plaintiff's claims, and the same was immediately corrected, and plaintiff's counsel suggested no other inaccuracy, the error, if any, was cured.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge.    *Affirmed.*

Action to recover the reasonable value of services alleged

to have been rendered by the plaintiff for and at the request of the defendant, which services were alleged to consist of legal work and advice and expert advice with reference to the exploring and leasing of iron mining lands on the Cuyuna ranges in Minnesota. There was some dispute on the trial as to the actual facts and very serious dispute as to the inferences of fact to be drawn therefrom. The plaintiff was and is an attorney at law in active practice at Superior, and was shown to have had much experience in mining business and litigation, in negotiating options on mining lands, drawing mining leases and options, and was also shown to have studied the iron formations in the Superior district and on the range in question.

In February, 1908, and prior thereto, one Thomas Keating owned three forty-acre tracts of land on the range in question, and the defendant owned one forty immediately north thereof. In February, 1908, Gaylord & Guith, drilling contractors, having discovered iron ore upon certain lands east of the lands of Keating and *Healy,* came to Keating and *Healy* for the purpose of making arrangements if possible to drill for iron ore on their lands, in consideration of an interest therein. They came to the plaintiff's office with Keating, February 29, 1908, and a contract was then entered into between them and Keating, whereby they were to make drillings on his land in consideration of a conveyance of a one-fourth interest therein. This contract was drawn by the plaintiff, as attorney for Keating, and its terms were substantially influenced by plaintiff's advice to Keating. Drilling commenced on Keating's land immediately and iron ore was struck about the 17th of March. Keating had instructed plaintiff not to inform *Healy* of the contents of the drilling contract, and when *Healy* met plaintiff on the street a short time after the contract was drawn *Healy* asked plaintiff about the terms of the contract and plaintiff informed him of his instructions, and declined to give him the information. Ac-

cording to plaintiff's testimony, plaintiff then told defendant that he would advise him with reference to his lands if he would call at his office and he (*Healy*) promised to do so, but this was denied by *Healy*. On the 31st of March defendant entered into a contract with the same drilling firm to drill his land, the terms of which contract followed so closely the terms of the Keating contract that there can be little doubt that the Keating contract was used as its basis. This contract was not, however, drawn by plaintiff, nor did he know of its execution at the time. Drilling proceeded on the lands of both Keating and *Healy* during the summer and fall. Blue prints and monthly reports of the drillings were furnished by the drillers to Keating and samples of the rock. These blue prints, reports, and samples were submitted by Keating to the plaintiff as furnished. After ore had been found on *Healy's* land and after Keating had begun to consider the question of making a contract for the mining of the ore, *Healy* told Keating, in substance, that he could take his (*Healy's*) samples of ore, and that whatever he (Keating) got for his ore he could deal the same way with his (*Healy's*). There is no direct proof of any broader agency than this on the part of Keating. Late in October or early in November, 1908, Keating made an oral arrangement with one Crosby to take mining leases of both his and *Healy's* land at a royalty of twenty-five cents per ton. The plaintiff claims that before this took place he had met *Healy* at his (*Brennan's*) office at Superior by appointment, and that *Healy* had brought him, at his (*Brennan's*) request, a blue print of the drilling on his forty, and that he (*Brennan*) then advised him (*Healy*) not to accept an offer of eighteen and three-fourths cents per ton made by Crosby, and that he promised not to do so. This interview is absolutely denied by *Healy*. On November 11th Keating came to Superior and he and *Healy* arranged to go to Crosby's office at Duluth to close the contracts with Crosby. At Keating's house there was a difference of opinion as to

whether they should take a lawyer with them to help them in their negotiations with Crosby. Keating and *Healy* did not wish to do so, but Mrs. Keating said, "So long as they were paying *Brennan* they might as well take him." Keating and *Healy* finally agreed and went to *Brennan's* office, and all three went to Crosby's office. *Brennan* assisted actively in the preparation of the necessary leases, deeds, and contracts on that day and the following, and the arrangement with Crosby by both Keating and *Healy* was finally closed.

The charge of the court to the jury is vehemently complained of as a mistake of the real issues, and it seems to become necessary to set it forth in some detail. The charge begins as follows:

"The plaintiff by his complaint in this action claims that during the time from February 29, 1908, to December 1, 1908, he was in the employ of the defendant as an attorney and as an expert in the matter of developing, exploring for iron upon and dealing with reference to forty acres of land on the Cuyuna iron range, in Crow Wing county, Minnesota, described in the complaint; that pursuant to such employment he rendered services to the defendant, and that such services were reasonably worth ten thousand dollars. Plaintiff does not claim that such employment resulted from any conversation or dealing had by him with the defendant personally, but claims that he was employed to render the services sued for by one Thomas Keating, whom he claims acted and was authorized to act in the matter as the agent of the defendant.

"The defendant to rebut the plaintiff's claim denies that Keating was authorized by him to employ plaintiff, denies that plaintiff was employed, denies that plaintiff rendered him any services for which claim is made, and denies that any service rendered for him by plaintiff, if rendered, was of any value.

"You are instructed that as to each claim made by the plaintiff the burden is upon him to satisfy you by a preponderance of the evidence and to a reasonable certainty as to his contention with reference thereto. As to the question whether

or not Keating was authorized by defendant to employ plaint-
iff, and as to the nature of the service for which he was au-
thorized to employ him, you are instructed that you may be
satisfied that such authority was in fact given by defendant
to Keating, either from direct evidence to that effect or from
proof of such facts and circumstances that such authority may
reasonably be inferred therefrom, and you are instructed that
such authority may be inferred from facts and circumstances
proven in the case, if such facts and circumstances are of such
a nature as to reasonably warrant such inference therefrom.

"You are instructed, also, that as to whether or not a con-
tract of service existed between the plaintiff and defendant,
that if you find that Keating was authorized by defendant to
employ the plaintiff in his behalf, that then the claim that a
contract existed may be established by proof of express em-
ployment, or by proof of such facts and circumstances that
the existence of a contract of employment may reasonably be
inferred therefrom, and that you have a right in considering
this question to draw such inference from facts and circum-
stances proven as their nature reasonably warrants.

"If you find that Keating was authorized by defendant to
employ the plaintiff, and that Keating in fact did employ
plaintiff on defendant's behalf, you will then consider the
question as to whether or not the plaintiff rendered services to
the defendant pursuant to such employment, and the kind
and amount of such service so rendered, if any."

The court then proceeds to state in substance that a con-
tract may be established by proof of express employment or
by proof of such facts and circumstances that the existence of
a contract may be reasonably inferred; that if Keating was
authorized to employ plaintiff and did in fact employ him,
the question whether services were in fact rendered pursuant
to the employment and the kind and amount of the services
so rendered must be considered; that there were two kinds of
services claimed, namely, services as an attorney and legal
adviser, and services as an expert in drilling, exploring, de-
veloping, and dealing with mining lands; that it was undis-
puted that plaintiff was in Keating's employ as an attorney,

but that there was a dispute whether he was in Keating's employ as an expert in matters relating to iron mining lands. The charge then proceeds as follows:

"This contention would be unimportant and wholly immaterial in this case except for the contention on the plaintiff's part that during the time in question he was employed by Keating as defendant's agent to render similar services to the defendant as to the defendant's lands, and that he did in fact render to the defendant services of that nature pursuant to such employment. The situation requires careful consideration on the part of the jury of the evidence bearing upon the question as to whether the minds of Keating and the plaintiff met on the matter of plaintiff being employed by Keating to render service for defendant. You are instructed that in order for you to find that plaintiff was so employed, you must find from the evidence, and by a preponderance of the evidence, that the minds of Keating as agent of defendant, if he was his agent, and plaintiff met upon that proposition, and in view of the fact that the plaintiff was serving Keating personally as his attorney, the evidence, in order to justify a finding that plaintiff was employed to render service in the capacity of an expert in mining matters, should be clear and convincing; this in view of the fact that it is a matter of common knowledge that business men who employ lawyers frequently discuss business matters with such lawyers, and that such discussion is customarily not made the subject of a charge by the lawyer separate from his charge for legal services, so that to justify you in finding that the minds of the parties to this action met upon a contract for services by which plaintiff was to receive compensation for services as an expert in mining matters, over and above his charge for services as a lawyer, the evidence upon that point should be clear and convincing.

"You are further instructed that if you find from the evidence that Thomas Keating was the agent of the defendant in relation to the handling, exploring, developing, and leasing of the *Healy* property, Keating's authority included whatever was necessary to effect the main purpose of the agency, including the employment of a subagent, and the defendant is bound by such employment even though not expressly authorized by him.

"The court further instructs you that no express employ-ment is necessary to charge defendant with liability to the plaintiff for services, which you find were performed by plaintiff for defendant in respect to the property in question, but that an agreement in fact creating such obligation may be implied or presumed from the acts and conducts of the par-ties; and further, that if you find that plaintiff did in fact perform services for defendant with his knowledge, defend-ant is liable to plaintiff for the same, unless you further find that such services were intended by the plaintiff to be gratui-tous, or that they were performed under such circumstances that the defendant was warranted in believing and did be-lieve that they were intended to be gratuitous."

. . . . . . . . . . .

"If the jury finds from the evidence that the plaintiff is entitled to recover from the defendant, then you are in-structed that he is entitled to recover the reasonable value of his services, and in estimating said value you have the right to allow him for all services performed, whether it consisted of both legal services and information, business and expert advice with respect to the handling of the defendant's mineral lands and ore, and the exploring, developing, and leasing of the same, or of only one kind of services, according to what you shall find in that regard.

"You are further instructed that in estimating the reason-able value of plaintiff's services which you find he performed for defendant, you should take into consideration the value of the *Healy* property and the financial benefits, if any, rea-sonably to have been anticipated by the parties at the time the services were rendered as resulting to the defendant from such services.

"You are further instructed that if plaintiff performed services at the request, express or implied, of Thomas Keat-ing, and a part of such services were in fact performed for the defendant, with his knowledge, defendant is liable to plaintiff for the reasonable value of that portion of such services which were so performed for him and of which he received the benefit.

"You are further instructed that if, as the agent of the de-fendant, Thomas Keating employed plaintiff to perform ser-vices which were beneficial to defendant in respect to the property in question, the defendant is liable to the plaintiff

for the reasonable value of such services, whether or not Keating informed plaintiff that the services were in whole or in part for the benefit of defendant."

The jury having returned a general verdict for the defendant, the plaintiff appeals from judgment thereon.

For the appellant there was a brief by *John Brennan, in pro. per.,* and *L. K. Luse,* of counsel, and oral argument by *Mr. Brennan.*

*W. P. Crawford,* for the respondent.

The following opinion was filed February 24, 1914:

WINSLOW, C. J.   A number of exceptions to rulings upon evidence are raised and argued in appellant's brief.   It must be sufficient to say with regard to these alleged errors that we have examined them and do not consider them of sufficient importance to justify their treatment in detail.   If there was error in any of them, it seems quite certain that it was nonprejudicial.   The real contention on the merits of the case is that the charge was misleading in that it gave the jury the impression that plaintiff claimed there was an express contract of employment and that it was necessary in order to justify a recovery that an express contract be proven; whereas as matter of fact the plaintiff only sought to recover on the ground that he had rendered valuable services to the defendant which were accepted by him, and for which the law will imply a promise to pay their reasonable value.

We do not regard this contention as sound.   The plaintiff in fact made both claims.   His complaint charged services of the reasonable value of $10,000 performed for the defendant "at his special instance and request."   Under this complaint there could doubtless be a recovery upon either theory.   An express request by the defendant or his duly authorized agent might be proven, or the rendition of the services with the knowledge of the defendant and their acceptance by him, thus raising the implied promise, might also be proven.   As mat-

ter of fact it is apparent that the plaintiff attempted to prove both and relied upon both. Very early in the case, while the plaintiff was on the stand as a witness, the question was asked whether advice given to Mr. Keating as to the value of ore on his forty would be advantageous to the owner of the *Healy* forty. Objection was made to this question, and the court asked what the theory of the evidence was, to which plaintiff's counsel replied, "Mr. Keating was the agent of *Mr. Healy.*" The court then said, "You haven't shown that;" whereupon plaintiff was withdrawn from the stand and a part of the deposition of the defendant, taken before trial under sec. 4096, Stats., was offered by plaintiff tending to show that *Healy* had given Keating authority to take samples from the drillings on his (*Healy's*) land and to make a deal with some person for the mining of the ore, and that he knew that *Brennan* was acting for Keating. After this testimony was received the plaintiff was recalled to the stand and asked to state "whether or not you rendered or performed any services at the request of *Mr. Healy* in regard to the ore, exploring, developing, and leasing of it on his forty acres (describing it), between February 1st and December 1, 1908." Objection being made to this question, a colloquy took place between court and counsel, and the court stated that he supposed there should be some proof of the fact that a contract relation existed as a basis for the testimony, and plaintiff's counsel replied "express or implied contract certainly." The court then said: "Your question . . . calls for a conclusion of the witness as to whether or not there was a request; probably the nature of the request should be made to appear." The objection was then sustained, and the plaintiff proceeded, evidently in accordance with the suggestion of the court, to prove a conversation with *Healy* in March about the Keating contract, his (plaintiff's) offer to advise him (defendant) about his contract, also an alleged conversation about October 31st concerning the Crosby offer and on the Monday

morning following at his (plaintiff's) office, when the blue print was produced by *Healy* and advice given by plaintiff as to the price which defendant should` demand of Crosby. The plaintiff followed this with proof of the conversations with *Healy* and Keating later when the contracts with Crosby were being discussed and drawn.

This evidence of agency on the part of Keating and personal conversations between defendant and plaintiff was followed by considerable evidence on the part of the plaintiff showing the advice given by him from time to time to Mr. Keating as to the manner of drilling, the depth of the holes, and generally what was best to be done, and this evidence was received by the court plainly on the theory that there had been *prima facie* proof made of request on the part of the defendant through the medium of Keating as his agent. Of course, it also tended to prove knowledge, but there can be no doubt that it was offered and received with the idea of proving request, and so we think the court was entirely right in submitting to the jury first the question whether Keating was authorized by the defendant to employ the plaintiff on his behalf, and, if so, whether he did employ him. That the plaintiff considered this question as a question in the case at the time of the trial is very evident from the following instructions which he submitted to the court:

"You are further instructed that if you find from the evidence that Thomas Keating was the agent of the defendant in relation to the handling, exploring, developing, and leasing of the *Healy* property, Keating's authority included whatever was necessary to effect the main purpose of the agency including the employment of a subagent, and the defendant is bound by such employment even though not expressly authorized by him.

"You are further instructed that if, as the agent of defendant, Thomas Keating employed plaintiff to perform services which were beneficial to defendant in respect to the property in question, the defendant is liable to the plaintiff for the reasonable value of such services whether or not Keating in-

formed plaintiff that the services were in part for the benefit of defendant."

Perhaps it would have been better not to have used the words "contract of service" and "employment" so frequently as they were used in the charge, but in view of the very full and comprehensive instructions given later in the charge on the subject of a recovery in the absence of any express employment or contract, we are convinced that there could be no misleading of the jury thereby.

There is doubtless one error in the charge, namely, in the sentence which instructs the jury that in order to find that the plaintiff was employed to render service in the capacity of a mining expert the evidence should be *clear and convincing*. This cannot be approved. In a civil case the jury are required to be convinced or satisfied of the existence of a fact by the preponderance of the evidence (*Anderson v. Chicago B. Co.* 127 Wis. 273, 106 N. W. 1077), except that in case of certain issues, including fraud, it is held that the affirmative can only be found upon evidence that is *clear and satisfactory*. *Bowe v. Gage,* 127 Wis. 245, 106 N. W. 1074. The issue in the present case is not one of the issues included in the latter class, and hence it must be held erroneous to charge the jury that the evidence must be *clear and convincing*.

We are satisfied, however, that this error was entirely unsubstantial. The evidence that Keating ever employed the plaintiff to render *legal* services for *Healy* is very slight, and the evidence that such employment included employment as a mining expert is practically negligible. It seems extremely doubtful whether any recovery could be sustained on any theory except the theory that the plaintiff rendered valuable services to the defendant (through his agent, Keating) which were accepted by *Healy* knowing that they were being rendered and that they were not intended to be gratuitous. This phase of the case was very fully covered in the charge of the

court by instructions which were favorable to the plaintiff and in fact included substantially every proposition which the plaintiff requested the court to give to the jury on the subject. It would be very hard to construct a more complete or favorable charge on the subject of liability resulting merely from the knowing acceptance of valuable services than the charge which the court gave. In our judgment the jury must necessarily have considered this as the only substantial issue in the case. The trial was long and characterized by eminently fair rulings; the plaintiff was permitted to place before the jury practically every material fact which he considered as bearing on his claim; the charge on the controlling issue was without error so far as plaintiff is concerned. There seems to us no probability and hardly a possibility of a different result upon another trial, and under these circumstances we entertain no doubt of our duty to affirm the judgment.

One sentence in the charge is complained of as a misstatement of fact, namely, the statement that the plaintiff did not claim that "such employment resulted from any conversation or dealing had with the defendant personally." With reference to this statement, it appears that at the close of the charge the defendant's attorney arose and stated to the court:

"There is one part of your honor's charge which if I understand it correctly is a little too favorable to the defendant in the case. Your honor stated that the plaintiff doesn't claim that any services were rendered to the defendant by virtue of express employment. The plaintiff did testify, however, that on the occasion immediately preceding going to Duluth to draw the leases he asked the defendant if he wished him to look after his papers, too, and that the defendant said he did. That was denied by the defendant and the witness Keating."

To which the court replied:

"I assumed that that was the situation, but I may be wrong. The jury has heard the statement of counsel; it only occurs

in the statement of claims made by the parties, and if that is the evidence they may so consider it."

This seems to us to cover the only substantial inaccuracy there was in the charge of the court. Had there been any other instance which ought to have been noticed, it would seem that counsel for the plaintiff should have assisted counsel for the defendant in his effort to eliminate possible error from the charge. In any event, the present position of the plaintiff seems almost to justify the statement of the original charge. In the plaintiff's brief in this court it is said that "the plaintiff does not claim and the evidence does not show any request in fact for services or any contract in fact. It shows, and plaintiff's theory was, that he rendered services to defendant's agent with the knowledge of defendant, and also to defendant, which were accepted by each of them; and that *Healy* had secretly appointed Keating his agent, and therefore obtained services by fraud and is liable therefor."

We find no substantial error in the record.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on May 1, 1914.